## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **NORMAN E. LACEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO: 3:06-CV-1145-MEF** |
| | ) | |
| **CITY OF AUBURN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

The Plaintiff, Norman E. Lacey ("Plaintiff" or "Lacey"), filed a charge of discrimination ("charge") with the Equal Employment Opportunity Commission ("EEOC") against the Defendant City of Auburn/Auburn Water Board ("Defendant" or "City") on June 26, 2006. In his charge, Lacey alleged that the City discriminated against him on the basis of his age (over 40) when it denied him a promotion to the position of Water Distribution Manager. (Ex. 1, Pl.'s EEOC Charge). On October 5, 2006, Lacey was issued his Notice of Rights to Sue by the EEOC. Lacey filed his Complaint with this Court on December 27, 2006, well within 90-days of receipt of his Notice of Rights to Sue. In his Complaint Lacey alleged causes of action for age

discrimination under the Age Discrimination in employment Act, 29 U.S.C. § 621 et seq. and the Alabama Age Discrimination in Employment Act, Code of Alabama § 25-12-22 et seq.

On December 14, 2007, the City filed its Motion for Summary Judgment and its Memorandum Brief in Support of Its Motion for Summary Judgment.  In its motion and supporting memorandum, the City requests that this Court grant summary judgment on all of the Plaintiff's claims based on several grounds. The following discussion will make plain, however, that genuine issues of material fact preclude summary judgment on any of these grounds.  The City's motion for summary judgment, therefore, is due to be denied.

## I.    FACTUAL BACKGROUND

### A.    Lacey's Background

Lacey's date of birth is August 10, 1948 and he was 57 years old at the time of the challenged employment decision.  (Ex. 2, Lacey Dep. p. 7).  Lacey is a high-school graduate and possesses a two-year degree in Water and Waste Water Management from Faulkner State Community College.  (Ex. 2, Lacey Dep. p. 20). Lacey also studied Civil Engineering at the University of South Alabama in Mobile for approximately two years, but did not graduate.  (Ex. 2, Lacey Dep. p. 21). Lacey has the following certificates related to Water and Waste Water Treatment and

Management: Certificate in Water Treatment; highest available, Certificate in Waste Water Treatment; highest available, Grade Four Water Operators Certificate (highest available); and a Master Plumber's License. (Ex. 2, Lacey Dep. p. 21-22). At the time that he applied for the Water Distribution Manager's position, Lacey had worked in the Water Utility Business as a shift/hourly employee and as a manager for over thirty-years. (Ex. 2, Lacey Dep. p. 35; Ex. 3, Resume`).

### B.     Lacey's Work History Prior to Coming to the City of Auburn

From 1971 to 1976, Lacey worked primarily as a shift operator for the Mobile Water System and the City of Prichard. (Ex. 2, Lacey Dep. p. 35-36, 38). In 1976, Lacey went to work for the City of Saraland as the Sewer Superintendent. (Ex. 2, Lacey Dep. p. 40). In this position, Lacey supervised two to four employees and was responsible for budgeting, reporting to the city administrators, reporting to state and federal compliance agencies, scheduling, and recommending discipline. (Ex. 2, Lacey Dep. p. 41-42). Lacey worked in this position with the City of Saraland until 1979,when he went to work for the Lake Forest Utility, a private company. (Ex. 2, Lacey Dep. p. 43).

At Lake Forest Utility, Lacey's position was that of Water and Sewer Superintendent, however, he had the same supervisory duties and responsibilities as he had had with the City of Saraland, except he supervised more employees, three

3

waste water employees and four water employees. (Ex. 2, Lacey Dep. pp. 44-45, 46–48). At some point, Lake Forest Utility was sold and Lacey was hired as a manager with Mobile County Water, Sewer, and Fire. (Ex. 2, Lacey Dep. pp. 48-50). This position was similar to his other supervisory positions in the Water Utility business. (See generally, Ex. 2, Lacey Dep. pp. 50, 51, 53-54, 55-56). Lacey was employed by Mobile County Water, Sewer, and Fire as a manager for approximately six-years, 1984-1990, when he left because of an injury. (Ex. 2, Lacey Dep. pp. 56-57). Lacey's next position in the Water Utility business was as Plant Superintendent for the City of Jackson Water Board where his duties mirrored those of his other management positions in the industry. (Ex. 2, Lacey Dep. pp. 57-58, 59-61).

In or around February 1995, the City of Jackson's water utility services were taken over by a private company. (Ex. 2, Lacey Dep. pp. 61- 62). Lacey was retained by the private company but he was reassigned to the City of Demopolis and his title was changed to that of Project Manager. (Ex. 2, Lacey Dep. pp. 62-63). His management duties did not change with this new employer either, except for the fact that he was responsible for more employees. (Ex. 2, Lacey Dep. p. 62, 63-65, 66-68). All of the management positions Lacey occupied required him to deal directly with consumers. (Ex. 2, Lacey Dep. p. 70).

C.    **Lacey's Employment with the City of Auburn**

In 1999, Lacey filled out a City of Auburn Employment Application for the position of Water Plant Operator.  (Ex. 4 , First Job App.).  After interviewing twice with City officials, Lacey was hired in August of that same year.  (Ex. 2, Lacey Dep. pp. 89, 92).  Lacey later received various documents from City of Auburn Human Resources Department which referred to him as a "Regular employee with the City of Auburn."  (Ex. 5, August 12, 1999 Letter & September 3, 1999 Memo).  The City of Auburn, as Lacey's employer, also provided health and life insurance benefits to him.  (Ex. 6, Life Insurance Enrollment Form & Health Insurance Enrollment Form).  On each of these documents the City of Auburn states that it is Lacey's employer.

Lacey's duties as a Water Plant Operator were as follows: he was required to check the levels in the tanks, produce water for the City, operate the pumps, check the chemical feeders, decide how many pumps to run, decide how much chemicals to feed, maintain filters, do in house-sampling of water, do hourly testing of water, and make whatever adjustments were necessary to increase or decrease water flow.  (Ex. 2, Lacey Dep. pp. 93-94, 97).  He also was required  by State law to be certified in Water and Wastewater treatment to work in this position.  (Ex. 2, Lacey Dep. p. 94).  These duties were all functions Lacey had performed before in various positions he had held in the Water Utility business.

In December 2005, Lacey was promoted to the position of Chief Operator.

(Ex. 2, Lacey Dep. p. 93, 101). Lacey's duties increased in that he had to check on water distribution, do more system sampling, and monitor the raw water pumping station. (Ex. 2, Lacey Dep. p. 104). He also had to do water sampling at homes and businesses in the Auburn community. (Ex. 2, Lacey Dep. pp. 107, 109).

### D.    The Water Distribution Manager Position

Lacey learned of the vacancy for the Water Distribution Manager's position from the fact that the incumbent, Toney Segrist, had resigned. (Ex. 2, Lacey Dep. p. 112). The City of Auburn advertised the vacant position in January 2006 via the City of Auburn's website, internally through a job posting, and externally in the Opelika-Auburn News. ( Ex. 2, Lacey Dep. p. 115; Ex. 7, Internal Job Announcement; Ex. 8, Newspaper Announcement). Lacey printed out an application from the online announcement, filled it out, attached his resume and submitted it to the City of Auburn personnel office. (Ex.9, Second Job Appl.; Ex. 3, Resume`).

Lacey was not interviewed right away because the City of Auburn changed the job description by taking out the duty of being responsible for water plant operations. (Ex. 2, Lacey Dep. p. 116). The job description for the Water Distribution Manager dated December 19, 2005 required knowledge of the following:

 • knowledge of local state and federal codes, acts, and policies concerning water, wastewater, and water pollution control

• knowledge of water distribution and water treatment operations

• knowledge of water and sewer line construction and maintenance procedures

• knowledge of basic civil engineering and land surveying principles and practices

• knowledge of public administration, municipal accounting, and budget procedures

• knowledge of the principles and practices of water utility business management

• skill in management and supervision of employee

• skill in reading maps, construction plans, and blueprints

• skill in managing water distribution, water treatment, and customer service

• skill in operating such office equipment as a computer and calculator

• skill in interpersonal relations

• skill in oral and written communication. (Ex. 10, Job Description).

## E.    Lacey's Interview

On March 16, 2006, Lacey was rated as satisfying the minimum criteria described in the job description for the Water Distribution Manager's position. (Ex. 11, Applicant Eval. Summ.). In April 2006, Lacey interviewed with a panel of six or seven people, including Scott Cummings the Director of the Water Resource

Management for the City of Auburn.[1]  (Ex. 2, Lacey Dep. pp. 127, 130, Def.'s br. at

4).  As Lacey's interview was about to begin, a young man on the interview panel

began shaking his head in a "no" type gesture.  (Ex. 2, Lacey Dep. p. 139).  Lacey

then sat down and was about to explain to the panel that he had just returned from

gallbladder surgery but was told to not elaborate on this fact by Cummings.  (Ex. 2,

Lacey Dep. p. 128).  The young man who shook his head no when Lacey entered the

room continued to make negative gestures toward him throughout his interview.  (Ex.

2, Lacey Dep. pp. 141-142).  Despite this obvious distraction , Lacey detailed to the

panel his, at that time, thirty-three years of working in the Water Utility business as

an operator and manager, his computer software experience, his experience with

contractors, his previous experience with billing systems, his reliability and

dedication to the job, and the fact that he knew the capacity and the quality of the

water that was being produced and delivered to the City of Auburn.  (Ex. 2, Lacey

Dep. pp. 137-138, 141, 143-144, 190-192, 193).

------

[1]Cummings selected the top three candidates to be interviewed for the position.  (Def.'s Ex. C, ¶3).  Cummings also selected the interview panel and as a City of Auburn official he made the ultimate employment decision, as detailed in his affidavit.  (Def.'s Ex. C, ¶¶4, 11). Cummings was on the selection committee and thus capable of making such an admission. *See, E.E.O.C. v. Watergate at Landmark Condominium,* 24 F.3d 635, 640  (4th Cir.  1994), cert. denied 513 U.S. 886 (1994)("Significant involvement either as advisor or other participant in a process leading to a challenged decision, may be suffice to establish "agency" it is not necessary that the declarant be the actual final decision-maker.").

Upon completion of his interview Lacey did not hear any thing about the position until he was informed by Martin Squires that someone had been hired for it. (Ex. 2, Lacey Dep. p. 150). Lacey later questioned his supervisor, Rick McCarty, about this issue and was told, "someone had been hired and he had no experience, but he was a younger man and there was going to be a stiff learning curve on this new job, and so they felt like he would be a better fit." (Ex. 2, Lacey Dep. pp. 152, 153). McCarty alleged that he was told this by Cummings. (Ex. 2, Lacey Dep. p. 153). At that point Lacey informed McCarty that he felt he had been discriminated against flat-out. (Ex. 2, Lacey Dep. p. 154). Based on Lacey's statement to McCarty, Cummings scheduled a meeting with Lacey to discuss his denial of the promotion. (Ex. 2, Lacey Dep. p. 155-156). According to Lacey, Cummings gave the following explanation for hiring the successful applicant, Kyle Hildreth:

> Q.    So what went on in this conversation between and you Scott? (sic)
>
> A.    Scott told me that they had hired this other man because he thought they had– he had more experience in dealing with the public, which I thought was odd. **And he went on to tell me that he wanted to hire someone in this position that would be there for a long time, indicating to me that he thought I was too old.** (Ex. 2, Lacey Dep. p. 157).
>
> ***
>
> Q.    When he made the statement according to you, that he wanted to hire someone who would be there for a long time, why did that

9

indicate to you that you were too old?

A.     Well, I assume that he was saying that I'm too- - he asked - - in fact now that you said that I do recall. **He asked how long it was to my retirement age, so he was definitely aiming that toward my retirement age - - but I recall him asking how long before you are going to be retiring.** (Ex. 2, Lacey Dep. p. 160). [2]

Lacey also expressed to Cummings that he felt he had been discriminated against. (Ex. 2, Lacey Dep. p. 162). Cummings and Lacey had subsequent conversations regarding this matter wherein Cummings told Lacey that he ought to be quite content where he was because he was doing a good job and that he (Cummings) was happy with his (Lacey) work. (Ex. 2, Lacey Dep. p. 163).

## F.     Kyle Hildreth, The Successful Applicant

Kyle Hildreth was chosen to fill the Water Distribution Manager's position. (Def.'s Ex. C, Aff. of Scott Cummings). At the time of his selection, Hildreth was forty-one (41) years old. (Def.'s Ex. J., Hildreth's driver's license). It is undisputed that Hildreth did not meet even the minimum qualifications for the position he was awarded as this fact is reflected by his Applicant Evaluation Summary and the job description. (Ex. 12 , Applicant Eval. Summ.; Ex. 13, Hildreth Appl.). Hildreth did

---

[2]Lacey's testimony directly disputes Cummings's contention that he never made such statements. (See, Cummings Aff. at ¶11). Moreover, as an interested party, Cummings's Affidavit cannot be relied upon for purposes of summary judgment except to the extent that it contains admissions against interest. Thus, the City of Auburn's contention that Cummings never made the comments attributed to him by Lacey is a disputed fact that precludes summary judgment.

not have any experience with the Water Utility business at all. (Id.). Despite these deficiencies, the panel found that Hildreth was more suited for the position than Lacey because of his alleged experience in the following areas: supervision, customer relations, staff management and operations for client's immediate needs. (Def.'s Ex. C, ¶7).

### G.    Lacey Is Asked to Do Hildreth's Job

After Hildreth received the position, an upset in the water lines in a certain part of town occurred. (Ex. 2, Lacey Dep. p. 170). Hildreth wasn't qualified to handle the situation and so he called Lacey and ordered him to go out and take samples of the water and assure the citizens that the water was alright to drink. (Ex. 2, Lacey Dep. pp. 170-171, 173). Lacey informed Hildreth that he would have to talk to his supervisor before he could do so. (Ex. 2, Lacey Dep. p. 173). Lacey hesitated because he did not think it was his responsibility to perform a task that Hildreth was supposed to have been capable of doing. (Ex. 2, Lacey Dep. p. 174). Moreover, Hildreth was not in Lacey's chain of command and had no authority over him. (Ex. 2, Lacey Dep. p. 174).

### H.    Lacey Resigns His Position

After this incident and because he had begun to be treated less favorably by the City, Lacey resigned his position. (Ex. 2, Lacey Dep. p. 199-200). On July 18, 2006,

Lacey was hired by Kellog, Brown and Root and was eventually assigned to work in Iraq as a Waste Water Operator, where he works twelve-hours a day, seven days a week while being shot at on occasion.  (Ex. 2, Lacey Dep. pp. 26-29, 30-32, 199-201).

## II.    ARGUMENT

### A.    Summary Judgment Standard

In *Hinson v. Clinch County*, 231 F.3d 821 (11th Cir. 2000), the Eleventh Circuit set forth the applicable standard of review  for summary judgment.

> "A court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weight the evidence." * * * "[T]he court should give credence to the 'evidence favoring the non-movant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'" *Id*. In other words, we must consider the entire record, but "disregard all evidence favorable to the moving party that the jury is not required to believe."

*Id.* (citations omitted; quotations from *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000).

## III.   PLAINTIFF'S AGE DISCRIMINATION CLAIM

### A.    The Plaintiff has Presented Direct Evidence of Age Discrimination

In *Van Voorhis v. Hillsborough County Bd. of County Com'rs,* 2008 WL 66258 (11th Cir. 2008), an opinion issued on January 8, 2008, the Eleventh Circuit defined

what constitutes direct evidence of discrimination under the ADEA. The Court stated: "We define direct evidence of discrimination as evidence which reflects a discriminatory attitude correlating to the discrimination or retaliation complained of by the employee." (citations omitted). When a prima facie case is established by direct evidence, a defendant's rebuttal burden is heavier than it would be under a McDonnell Douglas prima facie case. *Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1529 (11th Cir. 1985). A Defendant cannot rebut this type of showing of discrimination simply by articulating or producing evidence of legitimate, non-discriminatory reasons. *Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1529 (11th Cir. 1985). Once an unconstitutional motive is proved to have been a significant or substantial factor in an employment decision, defendant can rebut only by proving by a preponderance of the evidence that the same decision would have been reached even absent the presence of that factor. *Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1530 (11th Cir. 1985). Lacey has presented direct evidence in the instant case as there is testimony that the decision-maker, Scott Cummings, uttered remarks that reflect a discriminatory attitude and/or discriminatory animus on the basis of age.[3]

---

[3]Cummings, an interested party, has testified by affidavit that he never made any such remarks, however, at summary judgment the facts are to be viewed in the light most favorable to the Plaintiff. See also *Palosata v. Haggar Clothing Co.,* 342 F.3d 569, 574 (5th Cir. 2003)

Lacey testified that Cummings explained to him that the reason Hildreth was chosen for the job was the he (Cummings) wanted to hire someone he thought would be there for a "long time" and then he questioned Lacey about how close he was to his "retirement age."  As in *Van Voorhis*, the import of these statements could be nothing other than an intent to discriminate on the basis of age. *Van Voorhis,* 2008 WL 66258 at 3.   Moreover, as in *Van Voorhis*, the Defendant in this case changed the job description to better fit a younger applicant who was not qualified for the position. *Compare, Van Voorhis,* 2008 WL 66258 at 1 and Ex. 2, Lacey Dep. p. 116.  Therefore, based on these facts alone Defendant's Motion for Summary Judgment is due to be denied.  If the Court disagrees that Lacey has presented a claim for direct evidence of age discrimination, which it should not, he also easily presents a circumstantial case of age discrimination.

### B.    Plaintiff Has Established A Prima Facie Case Of Age Discrimination

---

(Courts  "must 'disregard all evidence favorable to the moving party that the jury is not required to believe.'"); *Sonnentheil v. Christian Moerlein Brewing Co.,* 172 U.S. 401, 408 (1899) ("[T]he mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact."); *Sartor v. Arkansas Gas Corp.,* 321 U.S. 620, 624-25 (1941) (discounting the value of affidavits of interested witnesses); *Hibiscus Assoc. Ltd. v. Board of Trustees,* 50 F.3d 908, 921 (11th Cir. 1995) ( "court should not generally grant a directed verdict based solely on the unfavorable testimony of an interested witness, even if this evidence is uncontroverted"); *J&H Auto Trim Co. v. Bellefonte Ins. Co.,* 677 F.2d 1365, 1369 (11th Cir. 1982) ( "as an interested witness, it is for the jury to evaluate the credibility of his testimony")*; Falk v. C.I.R.,* 332 F.2d 922, 927 (5th Cir. 1964) ("words . . .spoken by interested parties [is] a factor which any trier ordinarily can take into account").

### 1.     The Prima Facie Case

To establish a prima facie case of discriminatory failure to hire or promote under the federal anti-age discrimination statute, a plaintiff must show that (i) he is a member  of the protected group of persons between the ages of forty and seventy; (ii) he was qualified for and applied for a position the employer was trying to fill; (iii) he was denied the position; and (iv) others who were not members of the protected class (or who were substantially younger than plaintiff) were hired, or the employer continued to seek applicants with the plaintiff's qualifications.  *Underwood v. Perry County Com'n,* 431 F.3d 788, 794 (11th Cir.2005); *Vessels v. Atlanta Independent School System,* 408 F.3d 763, 768 (11th Cir.2005)*;Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1359 (11th Cir. 1999)*.*  The Defendant contends that because Lacey was replaced by a member of the protected class and that because the selection committee had members of the protected class in it he cannot make out a prima facie case.  (Def.'s Br. at 18).  Defendant's position on this point lacks legal foundation and should be disregarded because the fact that some of the decision-makers, the selectee, and the employee making the complaint are all in the in the protected age group does not eliminate the possibility of discrimination.

It is well established that simply because the  decision-maker and the victim of discrimination are of the same race, same sex or both over 40 years of age it does not

follow that discrimination could not occur. *Billingsley v. Jefferson County,* 953 F.2d 1351 (11th Cir. 1992)(stating that Title VII, which prohibits employers from discriminating because of race, provides cause of action even where both employer and employee are of the same race).   In addition, at the time of the challenged employment decision, Hildreth was 16 years younger than the Plaintiff. The Eleventh Circuit has held that an age differential of 3 years qualifies as substantially younger for purposes of the ADEA.[4]   *See Damon v. Fleming Supermarkets,* 196 F.3d 1354, 1360 (11th Cir. 1999)(stating that the Eleventh Circuit had "previously held that a replacement who is only three years younger is sufficient to establish a prima facie case.")(citing *Carter v. DecisionOne Corp.,* 122 F.3d 997, 1003 (11th Cir. 1997)). So it must be held that Plaintiff has presented a prima facie case of age discrimination.

## 2.    The Defendant's Legitimate Reason

After the Plaintiff establishes his prima facie case of age discrimination, the burden shifts to the defendant to articulate a reason for the adverse employment action.   In this particular case the defendant has articulated two reasons for the

---

[4]The mere fact that the person filling the position is over the age of 40 does not mean that age discrimination cannot take place. The factor to be considered under the ADEA is whether or not the individual filling the position is "substantially younger" than the plaintiff, not the fact that the replacement is over 40.  *See O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 313, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996); *Turlington v. Atlanta Gas Light Company,* 135 F.3d 1428, 1432 (11th Cir. 1998).

termination decision: (1)Hildreth's background and experience made him more qualified for the position and (2) Lacey gave a poor interview. Defendant's Brief p. 19. Once the defendant articulates a legitimate reason for the adverse employment action, the burden shifts back to the Plaintiff to establish that the Defendant's articulated reason is merely a pretext for age discrimination.

### 3.    The Defendant's Articulated Reason Is Merely A Pretext for Age Discrimination

The Plaintiff can point to several facts that show why the Defendant's articulated reasons are a pretext for age discrimination. A Plaintiff can demonstrate pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons ...that a reasonable factfinder could find them unworthy of credence...The trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Hamilton v. Montgomery County Bd. of Educ.,* 122 F.Supp. 1273, 1281 (M.D. Ala. 2000) (citations omitted). The Plaintiff is allowed to produce evidence "sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). A Plaintiff may show pretext using comparative evidence, statistical evidence or direct evidence of

discrimination.  *Miles v. M.N.C. Corp.,* 750 F.2d 867 (11th Cir. 1985).  Once the

Plaintiff has met this burden the Court "may not pretermit the jury's ability to draw

inferences from the testimony, including the inference of intentional discrimination

drawn from an unbelievable reason proffered by the employer." *Sheridan v. DuPont*,

100 F.3d 1061, 1072 (3d Cir. 1996).  The present Plaintiff can point to several pieces

of evidence from which a reasonable factfinder could infer a discriminatory motive

from the Defendant's actions.

### a.     It Is Undisputed That Hildreth Was Not Minimally Qualified For The Position

According to the Defendant's own paperwork, Hildreth did not meet the

minimum qualifications for the position.  (See Ex. 12, Hildreth Applicant Eval.

Summ., & Ex. 10, Job Description).  Cummings even testified that Hildreth had no

Water Utility business experience at all.  (Cummings Aff. at ¶7). Moreover, unlike

Lacey who at that point had 33-years of water and waste water treatment experience

as an hourly worker and manager, Hildreth had no knowledge or experience in most

of the areas required by the job description.[5]  It was obvious on the face of Hildreth's

---

[5]Hildreth lacked knowledge in the following areas required by the job description:

•knowledge of local state and federal codes, acts, and policies concerning water, wastewater, and water pollution control

•knowledge of water distribution and water treatment operations

application that he should not have even been a candidate for the position, much less the selectee. The Eleventh Circuit has long recognized that hiring a less qualified person can support an inference of discriminatory motivation. *Bass* v. *Board of County Com'rs, Orange County, Fla.,* 256 F.3d 1095, 1107-1108 (11th Cir. 2001)(citing *Alexander v. Fulton County,* 207 F.3d 1303, 1340 (11th Cir.2000) ("both the Supreme Court and this court have observed that evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting plaintiff was pretextual")).

In *Bass*, the Eleventh Circuit held that the fact that the Defendant promoted an employee who was unqualified under the Defendant's own criteria, over a qualified applicant supported an inference of discrimination by itself. *Bass v. Board of County Com'rs, Orange County, Fla.,* 256 F.3d 1095, 1107-1108 (11th Cir. 2001). It is undisputed that Lacey met and exceeded the minimum qualifications as set forth by the Defendant's own job description. It is equally undisputed that Hildreth did not.

_____

•knowledge of water and sewer line construction and maintenance procedures

•knowledge of basic civil engineering and land surveying principles and practices

•knowledge of public administration, municipal accounting, and budget procedures

•knowledge of the principles and practices of water utility business management

•skill in managing water distribution, water treatment, and customer service

19

(See Ex. 12, Hildreth Applicant Eval. Summ.).  Therefore, based on this point alone summary judgment is due to be denied.

### b.    Deviation from Standard Procedure

To try and make up for Hildreth's lack of qualifications, the Defendant deviated from the written job description by removing a job duty it knew he (Hildreth) didn't possess,  the water responsibilities that had previously been an integral part of the job.  (See Ex. 2, Lacey Dep. pp.  170-171, 173, 174).  *Bass v. Board of County Com'rs, Orange County, Fla.,* 256 F.3d 1095, 1107-1108 (11th Cir. 2001) (an employer's violation of its own normal hiring procedure may be evidence of pretext); *See also*, *Carter v. Three Springs Residential Treatment,* 132 F.3d 635 (11th Cir.1998) (citing *Harris v. Birmingham Bd. of Educ.,* 712 F.2d 1377, 1382-83 (11th Cir.1983) (the failure to promulgate hiring and promotion policies can be circumstantial evidence of discrimination and *Morrison v. Booth,* 763 F.2d 1366, 1373-74 (11th Cir.1985) (serious suspicions are raised  where it is alleged that established rules were bent or broken to give an applicant outside of the protected category an edge in the hiring process)).  Just as in *Bass*, the instant Defendant disregarded all the quantifiable factors and qualifications that were supposed to have been taken into consideration for filling the position and instead relied solely on

20

unquantifiable considerations that favored Hildreth.[6]  *See, Bass*, at 1108.  Moreover,

based on the testimony of its agents, it seems the Defendant was interviewing

someone for a position as customer service manager because the qualities it claims

were so important do not match the job description it published, which is the most

objective evidence on this point in the record.[7]  Therefore, for this reason summary

judgment is due to be denied.

### c.    Age Related Comments

Cummings's comment that he was looking to hire someone that would be

around a long time and his inquiry regarding when Lacey was planning to retire is

also highly suggestive circumstantial evidence from which a jury could infer

discriminatory animus.  *Damon v. Fleming Supermarkets Of Florida, Inc.,* 196 F.3d

---

[6]In *Van Voorhis*, the Defendant rewrote the minimum qualifications for the position because the applicant it wanted could not meet them.  *See, Van Voorhis,* at 1-2.

[7]Throughout its brief, the Defendant spends considerable capital on testimony regarding Lacey's alleged weaknesses with paperwork, his alleged lack of experience with contractors and subjective testimony regarding his performance during the interview as justification for its employment decision.  However, a close examination of the record reveals that Lacey never stated that he was weak on paperwork or documentation and specifically stated that he did not have any weak areas.  (Ex. 2, Lacey Dep. p. 136).  Lacey also outlined his past experience in working with contractors.  (Ex. 2, Lacey Dep. p. 193).  Furthermore, Lacey answered all questions posed to him in a satisfactory fashion, even though, a panel member openly displayed hostility towards him when he walked into the room.  (Ex. 2, Lacey Dep. p. 141-143).  Finally, Lacey had worked as a shift supervisor in a system that produced thirty million gallons of water a day while Auburn produces only six to eight.  (Ex. 2, Lacey Dep. pp. 35-36, 39).  These facts belie the Defendant's assertions that his background was not comparable to a system the size of the City of Auburn's.

1354, (11th Cir. 1999). Especially since Cummings was a decision-maker on the panel and the person Lacey questioned about the employment decision. These comments are not stray remarks because they give insight in to Cummings's state of mind at the time of the challenged job decision which was that he had a preference for a younger applicant. *Damon v. Fleming Supermarkets Of Florida, Inc.,* 196 F.3d 1354, (11th Cir. 1999)( citing *Beaver v. Rayonier Inc.,* 188 F.3d 1279, 1286 (11th Cir.1999)(finding decision-maker's comment that he wanted "younger" employees to constitute circumstantial evidence of a discriminatory motive); *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1499 (11th Cir.1991) (finding remark by supervisor to plaintiff that he had "been around too long and [was] too old and [was] making too much money" immediately after a "corrective interview" to be circumstantial evidence of age discrimination)).

   Furthermore, these statements were made on the heels of the decision to hire Hildreth and came from the same decision-maker. That Cummings made these comments after the decision was made is of no consequence. *Damon v. Fleming Supermarkets Of Florida, Inc.,* 196 F.3d 1354, (11th Cir. 1999)(citing with approval a 3rd Circuit case holding that remarks made *one year* after termination, and not directly about plaintiff, could be taken by a jury as an accurate reflection of the existing managerial attitude toward older workers) (emphasis added). Thus, a

22

reasonable jury could determine that these age based comments reflected a discriminatory animus on the part of Cummings. Therefore, for this reason summary judgment is not appropriate.

### C.    The City of Auburn is the Plaintiff's Employer for Purposes of the ADEA

Based on documentation submitted by the Defendant, the Plaintiff was clearly one its employees. First, all applications filled out by Lacey stated City of Auburn and make no mention of the Auburn Water Board. (See, Exs. 4 & 9). Second, after being hired Lacey received various documents from City of Auburn Human Resources Department which referred to him as a "Regular employee with the City of Auburn." (Ex. 5). Third, the City of Auburn, as Lacey's employer, provided him with health and life insurance benefits. (Ex. 6). Fourth, the job description for the Water Distribution Manager states City of Auburn. (Ex. 10). Fifth, the City of Auburn terminated Lacey as reflected by its In-house Termination Checklist. (Ex. 14, In-house Termination Checklist). Sixth, the City of Auburn sent Lacey a certified letter dated July 20, 2006, stating, "when you terminate with the City, you have the option of converting your life insurance, which was a benefit the City paid for you . . ." (Ex. 15, City of Auburn Letter Dated July 20, 2006). Seventh, the City of Auburn had the power to terminate Lacey's employment as reflected by the "Employment-At-

Will Disclaimer" it had him sign on August 2, 1999. (Ex. 16, Employment At Will). It states the following: "I understand the City of Auburn may terminate my employment at any time, with or without cause, and with or without prior notice." (Id.). It is axiomatic that you cannot terminate an employee that does not work for you. Thus, Defendant's argument in this regard is incredible and not worthy of belief as these documents do not reflect mere management duties, but give the City of Auburn complete control over the Lacey's employment, including promotions and terminations.

## IV.     CONCLUSION

For all the foregoing reasons, the Defendant's Motion for Summary Judgment is due to be denied in its entirety.

<div style="margin-left: 40%;">

Respectfully submitted,
/s/Roderick T. Cooks
Counsel for the Plaintiff

</div>

**OF COUNSEL:**
WINSTON COOKS, LLC
The Penick Building
319-17th Street North
Birmingham, AL 35203
Tel:  (205)502-0970
Fax: (205)251-0231
email: rcooks@winstoncooks.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing document on all persons listed below by CMF/Electronic Mail:

Randall Morgan, Esq.
Hilll, Hill, Carter, Franco,
Cole & Black, P.C.
425 South Perry Street
Montgomery, Alabama 36104
334-834-7600

Done this the 14th day of January, 2008.


/s/Roderick T. Cooks
Of Counsel