IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **NORMAN E. LACEY,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )    CASE NO: 3:06-CV-1145-MEF |
| | ) |
| **CITY OF AUBURN,** | ) |
| | ) |
|     **Defendant.** | ) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Defendant the City of Auburn in the above-styled cause and briefly replies to Plaintiff Norman E. Lacey's *Memorandum Brief in Opposition to the Motion for Summary Judgment of the Defendant*.

**A.   PUNITIVE DAMAGES**

Plaintiff does not oppose the argument that punitive damages cannot be awarded against the City of Auburn on any state law or federal law claims. Therefore, any causes of action for punitive damages should be dismissed as a matter of law.

**B.   FACTS**

    1.    In regards to the employer/employee issue, Lacey does not deny that he considered himself to be an employee of the Water Works Board, not the City of Auburn. (Lacey Depo. p. 82 at line 21 to p. 83 at line 6; p. 92 at lines 3-5; p. 93 at lines 13-17).

    2.    The record is void of any evidence or any indication that the Water Distribution Manager position was altered or changed by the City of Auburn for the purpose of tailoring the position to a particular individual. Therefore, Lacey's reliance on this assertion throughout the brief is misplaced.

3. Lacey admits that he was interviewed by a group of six or seven people and provided no contradiction whatsoever to the following:

   a. Applications submitted for the Water Distribution Manager did not reflect or request the applicant's age;

   b. At no time during the course of the interview was age discussed;

   c. At no time during the discussions following the interviews was age discussed; and

   d. All interviewers discussed each applicant and decided together that Kyle Hildreth was the top candidate based on qualifications the interview committee was looking for. (Cummings Aff. at ¶¶5-9; see also Howard Aff. at ¶¶5-6; see also Affidavits of Godfrey, Thompson, Bullard, Carson and Holland)

4. Lacey does not contradict the following facts:

   a. The two jobs that Lacey had immediately prior to the promotion in question were not in any way similar to what the Water Distribution Manager job entailed;

   b. While Mr. Hildreth did not have experience in water distribution, the committee was not concerned about that because he had many desirable and transferable skills as a manager of a concrete batch plant in Auburn including extensive supervisory responsibilities, scheduling responsibilities and intense project work; and

   c. Mr. Hildreth provided a very impressive interview as opposed to Lacey who admitted he did not read the job description, stated that he did not know what the Water Distribution Manger did on a day-to-day basis, admitted he

2

was weak on paperwork, and gave poor responses to questions regarding planning the staff work load for the week.

5. Lacey does not contradict the fact that Cummings spoke to Lacey's supervisor in an attempt to gather further information about Lacey's job experience because it seemed out of line with the attitude or information that Lacey demonstrated during the interview process. Speaking to Lacey's supervisor did not provide further assistance in deciding whether to select Lacey for the job. (Cummings Aff. at ¶10).

6. Lacey does not contradict the fact that he has no idea why one of the male interviewers allegedly shook his head when Lacey walked in the door.

7. Lacey admits that he is simply making an assumption about what he believes Cummings meant when making the alleged comments to Lacey after the employment decision. (Lacey Depo. p. 160 at lines 11-21).

8. The statement that it is "undisputed that Mr. Hildreth did not meet even the minimum qualifications for the position he was awarded" is simply untrue. (See Plaintiff's Brief at p. 10). First, there is absolutely no evidence that the individual awarded the position had to have a certain amount of experience based on any particular aspect of the job description. On the contrary, the evidence is that this was a supervisory, management position and the interview committee felt the critical areas of concern were supervisory experience, customer relations, staff management, operations for clients' immediate needs and experience with dealing with local contractors. (Cummings Aff. at ¶7). Moreover, Lacey cites a December 2005 job description that, according to Lacey, was changed to remove water operations as a responsibility. Lacey's apparent disagreement with what the critical qualifications for the job should have been, is not evidence that Mr. Hildreth was unqualified. Further, Lacey provides no contradictory evidence about Mr. Hildreth's strengths in the critical areas of concern according to the interview committee.

9. There is no evidence that Mr. Hildreth ever asked Lacey to do something because Mr. Hildreth was not qualified to do it as indicated on page 11 of Plaintiff's Brief. Rather, Mr. Hildreth was a supervisor and would have directed employees, including Lacey, to perform certain needed tasks. Lacey's reliance on his experience in the actual water utility business in comparison to Mr. Hildreth's ignores the undisputed fact that this was a supervisory position where qualities like organization, management, customer relations, etc. were exceedingly more important for the applicant to possess than simply being able to take samples of water. Such basic tasks could be done by other employees Mr. Hildreth worked with or supervised. Again, to the extent that Lacey disagrees with the importance of supervisory or managerial experience his opinion is irrelevant.

10. Lacey alleges that he was treated less favorably by the City of Auburn after Mr. Hildreth was hired, but there is no claim regarding disparate treatment and Defendant disagrees with this characterization of Lacey's testimony.

11. Critically, there is no dispute regarding the evidence that all members of the interview committee found that Mr. Hildreth gave the best interview, was the best candidate for the job, and deny that age was ever a part of their discussions or decision-making process. The argument that Cummings was the critical decision-maker, is meritless, and therefore, any alleged comments he made after the interview process should not be direct evidence of discrimination or circumstantial evidence of discrimination. This assertion ignores the undisputable role the interview committee played in the hiring process.

**C.   LACEY CANNOT ESTABLISH AN AGE DISCRIMINATION CLAIM**

Lacey failed to persuasively rebut the legal authority relied upon by Defendant in support of its motion for summary judgment.

1.   **THERE IS NO DIRECT EVIDENCE**

Lacey's reliance on *Van Voorhis v. Hillsborough County Bd. Of County Com'rs*, 2008 WL 66258 (11th Cir.) is unfounded. That case does not change the previous definition of "direct evidence," nor does it provide contradictory cases to the abundance of authority where more extreme and obvious statements were made in regards to age, but were not found to be direct evidence of discrimination. (See pp. 24-25 of Defendant's Memorandum Brief in Support of Summary Judgment). Regardless, it is undisputed that Lacey would not have been hired for the position in question even if Cummings' statements were direct evidence of discrimination. All interviewers agreed that Lacey was not the best candidate for the job and there is absolutely no evidence that they considered age, talked about age, or more specifically were aware of or discussed with Cummings his alleged statements to Lacey. Furthermore, the alleged statements were after the decision making process. In short, there is no direct evidence of age discrimination presented on this record as that term has been defined by the Eleventh Circuit, but to the extent that the Court considers Cummings' statements direct evidence, again, it is undisputed that Lacey would not have been promoted to the position in question. See *Wall v. Trust Co. of Ga.,* 946 F.2d 805, 809 (11th Cir. 1991).

2.   **NO PRETEXT**

The Defendant concedes that there can be an age discrimination case when the decision-makers are over forty and/or the person awarded the position in question is over forty. However, as stated in Defendant's Motion for Summary Judgment Memorandum Brief, it is certainly a consideration or worth noting when the decision makers and/or the successful applicants are, in fact, within the protected age group. See *Jones v. Ala. Power Co.,* 2007 WL 3496720 (M.D. Ala.) (holding that decision-makers being in the protected class weakens plaintiff's case and plaintiff

faces a greater burden) (citing *Moore v. Ala. Dep't of Corrections,* 137 Fed.Appx 235 (11th Cir. 2005) and *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466 (11th Cir. 1991).).

Also, Plaintiff incorrectly refers to Defendant replacing Lacey or otherwise refers to the reasons upon which the Defendant based its "termination" decision. There has been no cause of action raised regarding Lacey's resignation from employment. Rather, this is only a promotion case.

Lacey points to three factors which he argues present evidence of pretext creating a question of fact for denial of summary judgment. Lacey's arguments are unpersuasive:

### a.  HILDRETH WAS THE MOST QUALIFIED FOR THE JOB

Lacey argues that Mr. Hildreth was not even minimally qualified for the job based on several aspects of the job description. First, there is no evidence that the job description dictated the qualifications the committee looked for in filling the position. Second, Lacey admits that the job responsibilities which he relies to make this argument were changed before the interviews and the employment decision in question.[1] Critically, it is undisputed that Mr. Hildreth was the most qualified applicant based on the Defendant's articulation of what it found to be important about filling the position. To this end, Lacey's reliance on *Bass v. Board of County Commissioners, Orange County Florida*, 256 F.3d 1095, 1107-1108 (11th Cir. 2001) is misplaced. In that case, there was direct evidence that the defendant employer hired a minority pursuant to an alleged affirmative action plan and that the successful applicant had no experience as a Training Instructor and had no credits towards obtaining his teaching certificate. *Bass,* supra at 1107-1108. In the case at hand, the position in question was largely managerial with crucial needs for supervisory experience, customer relations, staff management, operation for clients' immediate needs and experience dealing with local contractors. (Cummings Aff. at ¶7). It is undisputed that "while Kyle Hildreth did

---

[1] The job description referenced by Lacey in the Opposition Submission is dated December 2005.

not have experience in water distribution, [such] was not a concern for [the interview committee] because he had many desirable and transferable skills that he had acquired as the manager of a concrete batch plant in Auburn." (Cummings Aff. at ¶8). Simply put, Mr. Hildreth possessed what the Board was looking for in an applicant.

Lacey cannot contradict that "Mr. Hildreth had extensive supervisory responsibilities, scheduling responsibilities and intense project work and it was apparent he could handle a stressful job." (Cummings Aff. at ¶8). The committee simply felt like these qualifications exceeded that of the other two candidates. (Cummings Aff. at ¶8). Lacey also cannot provide contradictory evidence that "Mr. Hildreth provided a very impressive interview. When answering the questions, he provided responses that were much more in line with what we were looking for than Mr. Lacey or the other candidate." (Cummings Aff. at ¶9). Regardless, the law is well settled that to create an issue of pretext by comparative qualifications, there must be a difference so glaring that no reasonable, impartial person could have chosen the candidate selected for the promotion in question over the plaintiff. See Alexander v. Fulton County, 207 F.3d 1303, 1240 (11th Cir. 2000). The fact that Lacey disagrees with what qualifications were critical to the interview committee certainly does not dictate evidence of pretext. See Gamble v. Aramark Uniform Services, 132 Fed.Appx. 263, 266 (11th Cir. 2005) (holding that a plaintiff's assertion about the "successful candidate's" alleged inferior qualifications are insufficient to demonstrate pretext). Defendant adopts the case authority it previously cited in its initial Memorandum Brief on pp. 19-23.

    **b.**  **THERE WAS NO DEVIATION FROM STANDARD PROCEDURE**

Lacey attempts to argue that altering the responsibilities for the new Water Distribution Manager was a deviation from standard procedure as the Eleventh Circuit has defined that concept in regards to creating pretext evidence. It is undisputed that there was no deviation from standard procedure here. There is absolutely no factual or legal precedent upon which to base the allegation

that an employer changing the aspects of a particular job before hiring someone into the position, constitutes "deviation from standard procedure." Lacey again relies on the *Bass* case to make this argument, but there is no similarity here. In the *Bass* case, the employer defendant violated written procedures regarding scoring applicants and reliance on interviews. *Bass*, supra at 1108. The notion that there were rules that were "bent or broken" in hiring for this position is unfounded and no such evidence exists. The Board simply exercised its rights to change the responsibilities of the Water Distribution Manager and there is absolutely no indication that this change was made in favor of or to the detriment of a particular applicant. In fact, the only evidence regarding the change in job description indicates that alterations to the particular responsibilities of the new Water Distribution Manager was made prior to the interview process. (See Lacey Depo. p. 116 at lines 7-23; p. 118 at line 13 to p. 119 at line 5). The water plant operations was removed as a part of the job. (Id). There is no evidence in the record that this change was motivated by who applied for the job. Moreover, Lacey's reliance on the *Van Voorhis* case for the premise that changing the job description to better fit a younger applicant is evidence of age discrimination is completely unfounded. Again, there is no evidence that the job description for the Water Distribution Manager changed at a particular time in relation to Mr. Hildreth's application for the job or because of Mr. Hildreth. Any changes in the job responsibilities were based solely on how the Water Board wanted the position structured. Any arguments that the job description was changed in order to hire a younger person is based on complete speculation and is not evidence of age discrimination. Lacey does not even insinuate same in his testimony.

    **C.    THERE WERE NO AGE RELATED COMMENTS THAT CONSTITUTE EVIDENCE OF PRETEXT**

Lacey's reliance on Cummings' alleged statements after the decision-making process is misplaced. First, it is undisputed that Cummings was one of several other interviewers on the committee and the committee collectively chose an individual other than Lacey. It is also

undisputed that age was not discussed, nor was age a part of the decision-making process. Speaking about retirement is not evidence of age discrimination. Based on the testimony of Cummings, Bullard, Carson, Godfrey, Holland, Howard, and Thomson, age was never even considered. (See Affidavits of Cummings, Bullard, Carson, Godfrey, Holland, Howard and Thompson).

        **d.**    **POOR INTERVIEW**

Notably, Lacey fails to address Defendant's articulated reason of poor interviewing other than to disagree that he gave a poor interview. However, again, his unsubstantiated opinion about his interview performance is not evidence. Regardless, each non-discriminatory reason must be rebutted and Plaintiff fails to do so. Defendant did not simply say that Lacey interviewed poorly. Defendant gave very specific examples wherein Lacey demonstrated a lack of interest by not reading the job description, admitted he was weak on paperwork and documentation, and gave poor responses regarding planning work loads for the staff. See *Chapman v. AI Transport*, 229 F.3d 1012, 1033 (11th Cir. 2000) (en banc). There is no evidence that this description of the interview is incorrect.

**E.**    **LACEY WAS EMPLOYED BY THE BOARD**

Lacey points to paperwork indicating that the City of Auburn employed him. However, the paperwork indicates the City of Auburn as the employer because the City of Auburn, in fact, contracted to handle the HR and management responsibilities. Lacey does not provide evidence contradicting the contractual agreement wit hthe City and the Board. It remains undisputed that the Water Board for the City of Auburn was Lacey's employer and Lacey understood such based on his undisputed testimony. (Lacey Depo. p. 82 at line 21 to p. 83 at line 6; p. 92 at lines 3-5; p. 93 at lines 13-17). As such, summary judgment is due to be granted in that the City of Auburn was not Lacey's employer.

F.  CONCLUSION

Defendant adopts and incorporates herein all factual and legal arguments and authorities presented in its Memorandum Brief in Supports of Motion for Summary Judgment on Behalf of Defendant. For all those reasons and the reason stated herein, Defendant requests summary judgment be granted and all Plaintiff's claims be dismissed as a matter of law.

Respectfully submitted this 22nd day of January 2008.

                                        City of Auburn, Defendant

                                        By: /s/ *Randall Morgan*
                                        Randall Morgan [MORG8350]
                                        Attorney for Defendant City of Auburn

OF COUNSEL:
Hill, Hill, Carter, Franco,
  Cole & Black, P.C.
425 South Perry Street
Montgomery, Alabama 36104
334-834-7600
334-263-5969 - Fax

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 22nd day of January, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following via email:

Roderick E. Cooks, Esq.
Winston Cooks, LLC
The Penick Building
319 17th Street North
Birmingham, Alabama 35203

                                         /s/ *Randall Morgan*
                                        OF COUNSEL